Mr. Kearney. Good afternoon, Your Honor. This is a contract case where he characterizes a breach of contract or other similar action relative to a claim appeal that before the court today on behalf of my client Cygnus Corporation to overturn the lower court's ruling on summary judgment. The lower court erred in several respects with regard to sustaining the government's motion for summary judgment. I'd like to direct the court's attention to several key findings. I will of course rely on the presentation of facts that we have in our briefs for the global picture as to what took place in this contract action. For purposes of today I would ask the court to bear in mind that the claim appeal and the contract underlying that appeal started with one thing and it was a proposal offered different pricing mechanisms. Pricing mechanism A was individual pricing for two different tasks under which the government could award a contract for task number one or task number two. There's no question that the government claims the benefit of the price which took into account the two portions but only exercised one part of the contract. But why isn't it clear from modification one that that's what you agreed to or your predecessor? Well, Your Honor, there's a fundamental problem with the lower court's interpretation of contract modification number one. And it's the fine print that appears in Block 14 of the agreement or the modification. That fine print says, in essence, except for what's stated above, everything else in this contract, this 2,500-page contract, remains in full force and effect and unchanged. But doesn't what's stated above refer to 13, 3, 1, 2, and 3? All these other option years, B, 5, 7, 9, 11, are eliminated. Option year one is exercised and the price is 971,000. Isn't that clear and specific? No, sir. And let me explain why. First of all, to clarify the court's observation just a moment ago, what modification one did was it deleted certain pages, B, 5, 7, 9, and 11, I believe. It did not eliminate option periods. It merely eliminated task two in the contract, but it did so with respect to the alternate staffing plan. Now, the reason why the reference to 900 plus $1,000 as a quote unquote price adjustment is that it was not a price adjustment. The modification did not add money into the contract. Those pricing pages merely set forth an estimate on the part of the parties, both parties, an estimate as to what the cost would be if the government ordered everything that was estimated in the level of effort. The obligation of additional funds did not obligate the government to spend one nickel of those funds. The number could have been a million dollars. It could have been $10 million. It could have been $50,000. It doesn't matter that it was $979,000, and it doesn't matter that that figure was plucked from page B4 of the contract. It does not matter. Why? Because the fine print instructs the parties that except as changed above, everything else in the contract remains unchanged. What was not changed above was the pricing for task one, which appears on page B5, and that material is in the joint appendix, and that pricing calls out simply the unit prices for task one if the only thing the government was going to order is task one. The lower court got it wrong because it ignored completely the fine print that appeared on the face of that page. Well, I know we may be going over the same territory again, but I'm having a hard time following you. Number three says specifically the contract ceiling is increased by a specific amount, and that amount corresponds to the price of task one if both tasks are performed. Am I right so far? It increased an estimate, Your Honor. But that number, can you answer my question though? Does this number represent the cost of task one if both tasks have been completed? That's the number that was drawn in terms of what the contract ceiling is increased by. Am I right or wrong about that? With all due respect, Your Honor, you're wrong. Why? The reason you're wrong is because the modification and any subsequent modification where the ceiling amount of the contract had been increased. Is that it merely set a top level boundary beyond which neither the government could order more nor the contractor provide more services. The contract modification question didn't obligate the government to do anything under the contract. It didn't obligate the government to spend one cent. But it set a ceiling for how much the government could spend. Right. Yes. And that ceiling consisted of an amount that was equivalent to the amount that you say was too low, the amount that represented the cost of task one, if it was part and parcel of task one. As a matter of coincidence, it coincided with the number that appeared on the total on page B4 of the contract. It did. Coincident or not, it's precise. It may be precise to the penny, Your Honor. But that does not escape the scrutiny of the fine print. The fine print, as a matter of government contract construction, carries the day in this modification. If the government, for example, had deleted not only task two, but had put a simple statement there deleting any other pricing pages in the contract, we wouldn't be here today. But both sides accepted the rate of pay. How long did it take before someone spotted that the contract was being paid at the lower rate? It was after performance, was it not? It was during course performance. How far into performance? I want to say, Your Honor, it was on the order of 12 to 18 months on a roughly five-year, projected five-year contract. Remember, this was a base of 12 months plus individual annual options thereafter. So a little over halfway into performance, and roughly 12 to 18 months after the contract modification was cut, did my client start to realize that they were losing a massive amount of money on this contract. They did their number analysis and came to realize that the wrong unit prices had been called out in the modification. Now, it's also important, I think, Your Honor, to emphasize one correct finding by the lower court, and that is the court found that there was no release of claims. Also, as a fundamental tenet of government contract law, whenever the parties enter into bilateral modifications, invariably, especially where there is a loss of work such as here, a deletion court, there is going to be a release of claims. There was no release of claims here. There was a subsequent novation from contractor A to contractor B. The court properly determined that the novation in and of itself did not constitute a release of claims. So we come back down to modification one and the court's ruling that modification one bars this claim. A 2,400 page contract, roughly this tall, three lines bars this claim, notwithstanding the inclusion of fine print, which says, unless the parties expressly agree to change something, everything else remains in full force in effect, and the alternate, excuse me, the task one pricing only was not changed. It was not deleted from the contract. It coexisted within that contract. At a minimum, it creates a question. We would submit a latent ambiguity, which the court never addressed, but separate apart. If the court were to look at that modification one and say, Mr. Kearney, this is what the parties agreed to. Why should we look any further than that? The court respectfully must look to the consideration that was put forward. The lower court ruled that merely by signing the modifications, that act in and of itself constitutes consideration. And we've cited the Torricello case and the abatement case for the proposition of no. The government's agreeing to extend a contract by exercising an option without more does not constitute fresh consideration. And in this instance, what Cygnus got out of the deal was they actually got less work than they originally bargained for. Of course, the government didn't have to exercise any option, right? At all. It was entirely within the government's discretion. Isn't the, doesn't that provide consideration? In what way, your honor, that the government exercised an option that they didn't have to exercise? Agreeing to pay a specific amount for certain work. But the government agreed to pay a specific amount for two tasks, not for one task. It raises an entirely separate question whether or not the government could properly exercise, if you will, half an option. The pricing that was in the alternate staffing plan encompassed, you exercise option year one, it's for both tasks. Not for half of what was bargained for. But on this issue of consideration, the point that I'd like to make to the court is that since there is no fresh consideration, the government got nothing more than it had bargained for, nothing less than it had bargained for. And it gave nothing more to Cygnus to cut this work workload by better than half. The government doesn't exercise the option, say, so the parties are free to walk away. Walk away, right? That's the way it works, your honor. Right. So, government says, okay, modification one. We agree to do, have you do this, we'll pay that. But the government. Sounds like a good contract to me. The government did not, and perhaps I'm being unartful here. Modification one did not obligate the government to pay anything. All it did was raise a funding ceiling. But if failure to exercise any option meant that the deal was over, then they are starting again, aren't they? No, your honor, I would respectfully disagree with that. And the reason I would disagree with that is because the contract as originally awarded included a schedule of option periods. It was not as though the parties crafted a new option. But they exercised the option. The government exercised the option. Under the modification. There was a modification exercising the option, that's correct. I'm cutting into my rebuttal time. Let's hear from the government and we'll save your rebuttal time. Ms. Floyd? I'm pleased to. Ms. Floyd, did the government terminate or let contract lapse at any point? No, there was no period of time in which the work was not performed. The government notified the contractor approximately three months prior to the end of the contract that it was not going to exercise any option. And the contractor came in and said, we put a lot of effort into this work. We want to continue on this contract. And the government said, we'll exercise one of the two tasks. And it exercised task one. And it exercised task one at the alternate staffing plan price. And that was the intent of the parties when we modified the contract under modification one. What about the fine print Mr. Kenney refers to? The fine print is indeed there. You're not going to say there's no fine print in the government contract. No, it is indeed there, your honor. And the meaning of that is that all of the other terms, other than the ones identified in the modification, remain in effect. But in pointing to the, there was alternative pricing from the very inception of the proposal. The language to which the appellant refers is in the proposal itself. But in the contract, when it was initially awarded, the government elected the alternate staffing plan price. So it remained in the language of the proposal, but in effect, the government purchased the services for the alternate staffing plan price. But what they did for the task one, then the way it worked out, whether anybody knew that that's what was happening or not, I suppose, is still open to question. But the way it worked out was that task one was now being paid at a different rate than the contract provided for a contract for task one. And neither side noticed it right away, apparently, which perhaps is not that surprising. But if you look at it literally, isn't it in fact what the appellant says accurate in terms of the rate of pay for task one when that's the only task that's awarded? Your Honor, the modification one refers to page B4, B.4, which has the alternate staffing plan price as if the government exercised both options. At the rate if both options, if both tasks were to be performed. That's correct, Your Honor. But when it was exercised, it was clear that both were not going to be performed. That's correct, Your Honor. The contractor knew, as a result of the negotiations, when it urged the government that it in fact should have some kind of contract, that it was going to be paid for the only task one at the alternate staffing plan price. There was no objection on the part of the contractor that took the contract. The sickness was replaced. Well, you can't say there was no objection. It just took a while for the objection to take place. You might say it took too long, but it's pretty clear that he objected. Herner, which was the company that performed the work for the first option year, in fact, did not object. And it performed the work at the initial basic price and at the first option year price. And Cygnus came on later, and it continued to perform the work that Herner was performing at the alternate staffing plan price. And it wasn't until months into the contract that Herner had been performing that it began to object. It even performed the work at the alternate staffing plan price. But these are really different questions, aren't they? Whether, in fact, the contract was awarded literally when only task one was performed at the rate of task one, but nobody recognized that it was being paid at the combined rate for however long it took, a year, a year and a half. You might say, again, that there was acquiescence, that there was ratification, that there were all sorts of reasons why perhaps it's not subject to adjustment at that stage, but that's different from what the contract literally said. Well, the contract refers to page B.4, which has the ceiling price for task one, which is equivalent to the ceiling price in paragraph three of modification one. So the parties knew that they were being awarded, that the contractor knew that it was being awarded the task one price at these alternate staffing plan prices. All it had to do was refer to page B.4. It's inherent. I'm sorry, I heard you say, knew it was awarded the task one price. It wasn't awarded the task one price. It was awarded the alternate staffing plan price of option one under the price, under the lower price. Yes, for both tasks. But in modification one, which was the exercise of the option for only one task, the prices that are listed on page B.4 are the lower prices. So there was no question on the part of the contractor that he would be paid at these lower prices, because that's what appears on page B.4. There's no reference to the higher prices. There's only reference to the lower prices. And that's what the contractor said. That's why he's here? Excuse me? When you say there was no question, obviously there's a question. That's what the contractor is challenging. Well, the follow-on contractor is challenging it because he'd like more money. But the initial contractor that entered into the agreement with the government did not challenge that. He was paid at the lower price and continued to perform at that price. Cygnus didn't make this deal. They inherited it. That's right, Your Honor. They did inherit the deal. They inherited the deal during the second option year. But in fact, there is no question that the parties agreed to perform the work of the task one at the lower price, the alternate staffing plan price, because that's what appears in the modification. It refers to page B.4, which is the lower staffing price. What about item 3? Is there some significance to the amount of money? Let's assume number 0.2 wasn't here, and we were just talking about the ceiling amount increased by 971. Is that enough in the government's view? Well, it also refers to the same page that point B.4 is. It's on the same page, which is appendix page 46. They basically inform one another. I think B.4 is helpful. Paragraph 2 is helpful. But it also is supported by paragraph 3, which refers to the $971,913 and odd cents. So it was both the final price, which was the lower price for the task one work, and also the particular unit prices that appear on page B.4 that the parties contracted for in the option period of time. Did a Horner representative testify? Did the initial? Yes. Mr. McRae? Mr. McRae was the original awardee of the contract, and he did testify. And his testimony is the testimony, half a loaf is better than none, to which we refer in our brief. The contractor was satisfied that he could continue the contract work at that price, simply because his alternative at the time that he had negotiated the contract was perhaps no work at all. But the successor company, of course, is not happy with that. That's correct, Your Honor. OK. Any more questions? Yes. Any more questions? Thank you, Ms. Horner. Thank you very much. Mr. Kareny? Your Honor, a few points. I heard opposing counsel report several times in her remarks the intent of the parties. If the court is looking to intent relative to price, it's going to have a hard time ascertaining what that intent was, because the testimony presented on motion for summary is that price was never discussed during the pre-signature activities leading up to modification law. Not one exchange between the parties about price. It is therefore fallacious to suggest that Horner, the predecessor, understood what the price was going to be and knew that it could perform at that price. It knew nothing of the sort because there's no evidence in the record to indicate that it knew what the price was ultimately going to be or that it could perform that price. Didn't it say half a loaf was better than? Half a loaf of what, Your Honor? Half a loaf of the contract that was bid with separate pricing for one task versus two tasks? That half a loaf, they'll accept. But half a loaf where the government keeps the entire benefit of the bargain at its drop, but in essence, gets the additional benefit of discounted pricing for offering less work. No, that was not the intent of the parties. The other question that was presented was whether or not Horner objected to the pricing once it was being performed. Now, the contract was novated roughly halfway through performance. But the assignment of the contract from Horner to my client, Cygnus, took place just a few months after the modification was signed. Until the contract is actually novated from Horner to Cygnus, Cygnus has no contractual standing with the government to raise the objection sooner than it did. Cygnus raised the objection to this pricing mechanism just two months after the novation was signed and it acquired legal standing, if you will, to pursue a claim in front of the government. So in that respect, it did timely pursue its rights. One other point that came out relative to the modification and every subsequent modification, paragraph 3 of the mod, which refers to the contract ceiling amount is increased by $971,913.56. I want the court to understand with certainty that this was not a fixed price contract. There's evidence in the record, ample evidence in the record, to indicate that the government never spent anywhere near that amount of money during the first option period of the contract. The increase of the ceiling amount merely captures a line above which the parties can neither spend nor perform more than. But in order for the government to spend any money, it's got to place an order. There has to be a separate piece of paper outside of this modification obligating the government to spend one red cent. Unless the court has further questions, I'm content for a line of briefs. Thank you for your time, Your Honor. Thank you, Mr. Kerning. Ms. Floyd, the case is taken under submission.